Ronald W. Roush
6706 S. Fanazick Pl.
Spokane, WA 99204
(509) 701-9653
ron.roush@avsec-sme.com
Plaintiff Pro Se

James H. Hunter
P.O. Box 1252
Airway Heights, WA 99001
(509) 230-7424
james.hunter@avsec-sme.com
Plaintiff Pro Se

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RONALD W. ROUSH and JAMES H. HUNTER,<br><br>　　　　　　　Plaintiffs,<br><br>　v.<br><br>AKAL GROUP OF COMPANIES, LLC, d/b/a Akal Security, Inc.,<br><br>　　　　　　　Defendant. | NO:  2:17-CV-358-RMP<br><br>**FIRST AMENDED COMPLAINT**<br><br>INVASION OF PRIVACY - APPROPRIATION OF NAME OR LIKENESS (TORT CLAIM)<br><br>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (TORT CLAIM)<br><br>UNJUST ENRICHMENT<br><br>DEMAND FOR JURY TRIAL |

**NATURE OF ACTION**

1.　Through this Complaint, Ronald W. Roush and James H. Hunter seek compensation for Akal Security's unlawful use of their names and professional reputations to win a $110

ROUSH ET. AL. V. AKAL GROUP OF COMPANIES, LLC D/B/A AKAL SECURITY, INC.
FIRST AMENDED COMPLAINT - 1

million U.S. Transportation Security Administration (TSA) Screening Partnership Program (SPP) contract for Kansas City International Airport (MCI). Despite having knowledge that their names and reputations directly contributed to Akal's contract award, Akal failed to offer any form of compensation to Mr. Hunter and Mr. Roush.

## PARTIES

2.     Plaintiff Ronald W. Roush ("Roush") is an individual and a resident of the State of Washington. Mr. Roush is a recognized aviation security expert and decorated U.S. Navy veteran and with more than fifteen years' experience creating and managing commercial airport security operations and security technology deployments in for the U.S. TSA and at airports in Iraq and Afghanistan.

3.     Plaintiff James H. Hunter ("Hunter", collectively "Plaintiffs") is an individual and a resident of the State of Washington. A U.S. Air Force Special Operations veteran, Mr. Hunter possesses unparalleled experience managing airport and aviation security programs in the U.S., Africa and Middle East for the U.S Department of Homeland Security (DHS), United Nations and others.

4.     Defendant Akal Security, Inc. ("Defendant") is a corporation registered in the state of Washington, and whose registered agent is located at 505 Union Ave. S.E. Suite 120, Olympia, Washington. Akal has managed the TSA SPP security screening services contract at Kansas City International Airport since 2014.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction under RCW 2.08.010, and because the amount in

controversy is greater than $100,000.00.

6. Venue is proper under RCW 4.12.020, because this is an action for the recovery of damages for injury to personal property. Venue is further proper under RCW 4.12.025(3)(a), because the actions giving rise to this Complaint occurred in Spokane County.

### STATEMENT OF FACTS

#### General Background

7. The U.S. Aviation Transportation Security Act (ATSA) of 2001 and other related acts of Congress charged the U.S. Transportation Security Administration (TSA) with responsibility for management and oversight of the TSA Screening Partnership Program (SPP). This program is a means by which U.S. commercial airports can elect to have private companies, rather than Federal employees, perform passenger and baggage screening functions. While individual airports make the choice to utilize a private screening workforce, it is TSA that publishes SPP solicitations, evaluates bids, selects contractor awardees and administers contracts. Kansas City International Airport (MCI), Kansas City, Missouri was one of five airports selected in 2001 to use a private screening workforce, and is currently one of approximately twenty SPP airports nationwide utilizing private screening providers. In 2004, TSA issued its initial SPP contract award to FirstLine Transportation Security, Inc. ("FirstLine") for aviation security screening services at MCI.

#### TSA's 2010 Attempt to Award the MCI Contract

8. TSA made its first attempt to procure a new MCI security screening services contract in 2010. On January 21, 2010, the agency issued a Request for Proposal for security

ROUSH ET. AL. V. AKAL GROUP OF COMPANIES, LLC D/B/A AKAL SECURITY, INC.
FIRST AMENDED COMPLAINT - 3

screening services at MCI under solicitation number HSTS03-10-R-SPP032. TSA awarded contract HSTS03-11-C-SPP052, valued at $150,830,471.70, to Defendant on April 22, 2011. FirstLine, the incumbent MCI contractor, filed a post-award protest with the Government Accounting Office on May 2, 2011, and a subsequent Court of Federal Claims on June 10, 2011, after withdrawing its GAO protest.

9. Court of Federal Claims Judge Lynn J. Bush issued a decision on September 27, 2011. In the decision, Judge Bush found that TSA's award decision was fundamentally flawed and must be set aside. Further, Judge Bush issued an injunction against TSA's contract award to Akal.

## TSA Issued a New MCI Contract Solicitation in 2012

10. After a review of its internal source selection plan processes, TSA issued solicitation number HSTS05-12-R-SPP038 for aviation security screening services at MCI On July 23, 2012. After several extensions by TSA, the deadline for submission of proposals was set for March 4, 2013. Like other offerors, Defendant responded to the solicitation with a bid proposal within the allotted timeframe.

11. In the period between the deadline and contract award, TSA performed a technical evaluation of each offeror's proposal. Section L.6 "Proposal Submission Requirements" of the solicitation defines and describes five technical criteria, in addition to price, used to select the contract award. Factor 2.0 "Program Management", is relevant to this Complaint, stating in part:

> "The Offeror shall identify the Key Personnel proposed for the contract, by name and role, including the individual proposed as Program Manager. The Offeror shall summarize the succession strategy for Key Personnel, and the location and level of commitment to the program for each (whether they will hold part-time or full-time positions after the transition phase of the contract). The Offeror shall also provide resumes of Key Personnel which

ROUSH ET. AL. V. AKAL GROUP OF COMPANIES, LLC D/B/A AKAL SECURITY, INC.
FIRST AMENDED COMPLAINT - 4

demonstrate experience and education relevant to the SOW, along with letters of intent to hire (or to retain, if currently employed by the Offeror) each individual if awarded the contract."

12. On February 24, 2014, TSA announced that Defendant had been awarded the contract for security screening services at MCI, valued at $108,878,523.97[1]. Soon thereafter, on March 7, FirstLine filed a post-award protest with the U.S. Government Accounting Office (GAO). After the protest was dismissed by GAO, FirstLine was clear to file a subsequent protest in the U.S. Court of Federal Claims[2] on April 15, 2014.

13. The Court of Federal Claims issued its decision in favor of TSA and Defendant on November 14, 2014, and TSA gave Defendant Notice to Proceed with MCI contract activities on November 18, 2014.

### Defendant Sought Plaintiff's Expertise to Win the 2012 MCI Contract

14. Plaintiffs are professional aviation security consultants with more than thirty years' combined aviation security experience in the U.S., Africa and the Middle East. Plaintiffs are regarded by peers and colleagues as aviation security experts, and are actively engaged in the pursuit of aviation security-related business in the U.S. and elsewhere. It was because of Plaintiffs' specialized aviation security expertise and qualifications that Defendant initially sought them out with regards to the MCI contract.

15. On or about September 5, 2012, Defendant conducted telephone interviews with Plaintiffs regarding potential positions as management team members at MCI. Under Defendant's proposal, Hunter would serve as the MCI Deputy Program Manager, and Roush would serve as Training Manager. Plaintiffs accepted the proposed assignments offered by

---

[1] TSA Contract HSTS05-14-SPP011
[2] FirstLine v. US, 1:14-cv-00301-TCW

ROUSH ET. AL. V. AKAL GROUP OF COMPANIES, LLC D/B/A AKAL SECURITY, INC.
FIRST AMENDED COMPLAINT - 5

Defendant, with the understanding that any formal offers of employment would be contingent upon contract award. At all times, Plaintiffs believed that Defendant's bid had already been submitted to TSA, and at no time did Defendant solicit, nor did Plaintiffs give consent to use their names, likenesses or qualifications in any bid proposal.

16. On February 24, 2014, TSA issued an announcement that the MCI contract had been awarded to Akal Security, contract number HSTS05-14-SPP011.

17. On the same day, an Akal employee contacted Plaintiffs by phone to inform of the contract decision, and that the Akal management team would conduct "town hall" meetings with screening workforce personnel on March 11 – 14, 2014. Another employee sent an unredacted copy of the TSA / Akal contract document via e-mail to Roush. Upon review of the contract document, Roush noted that section I.7 "Key Personnel" listed his and Hunter's names as Training Manager and Deputy Program Manager, respectively.

18. In a February 26, 2014 teleconference, Defendant informed Plaintiffs that FirstLine was not expected to file another post-award protest, despite FirstLine's favorable ruling following the first MCI award in 2012. Defendant also informed Plaintiffs that an Akal subcontractor, Synergy Solutions, Inc., would handle hiring and payroll for Plaintiffs' positions. Defendant further explained that, from an operational perspective, Synergy Solutions would report to Plaintiffs once the contract started.

19. Contrary to Defendant's assertions, FirstLine did, in fact, file a GAO protest on March 10, 2014. The action prompted TSA to issue a Stop-Work Order to Defendant. Defendant immediately informed Plaintiffs that the contract was on hold until further notice. Defendant, through Synergy, advised Hunter that he should "stay home", despite the fact that

ROUSH ET. AL. V. AKAL GROUP OF COMPANIES, LLC D/B/A AKAL SECURITY, INC.
FIRST AMENDED COMPLAINT - 6

Hunter had already broken his lease, sold household items and take other steps to relocate from Spokane to Kansas City.

**<u>Defendant Dropped Plaintiffs After Contract Award</u>**

20.  Throughout the period following the protest action's filing, Plaintiffs had almost no contact with Defendant. Plaintiffs were forced to pay for their individual living expenses from their own pockets and, to help defray their costs during the protest period, made several inquiries to Defendant regarding other work. Defendant declined to discuss the matter.

21.  In early August 2014, Plaintiffs traveled to San Francisco to attend a TSA Industry Day conference at their own expense, with the intent to further their individual understanding of the Screening Partnership Program and the upcoming TSA solicitation at SFO. During the conference, Plaintiffs encountered an Akal executive, Robert Ray, who was directly involved with Defendant's MCI contract activities. Adding insult to injury, Ray opened the conversation by asking Hunter, "So, Jim, are you still homeless?", indicating that he was well aware of Hunter's predicament. Despite Hunter's affirmative answer to his question, and attempts by both Plaintiffs to discuss the financial hardships imposed upon them by Defendant's actions, Ray refused to further address the matter. Instead, Ray asked in which hotel Plaintiffs were staying. Ray then asked Plaintiffs not to share information they had gathered during the conference with anyone other than Defendant.

22.  Finally, in late August, 2014, Plaintiffs sought legal guidance from Dale L. Ingram, a Kansas City-based attorney. On September 5, 2014, Mr. Ingram prepared and submitted a demand letter to Synergy Solutions and Defendant in an effort to obtain some form of compensation for Plaintiffs.

ROUSH ET. AL. V. AKAL GROUP OF COMPANIES, LLC D/B/A AKAL SECURITY, INC.
FIRST AMENDED COMPLAINT - 7

23.     On October 14, 2014, Mr. Ingram received a response from counsel for Synergy Solutions stating, in part, that "Akal had reorganized the structure of the team", and that any offer of employment to Plaintiffs had been rescinded since the positions no longer existed at Synergy. Plaintiffs subsequently discovered that their positions had been posted on Defendant's company website.

24.     Despite the fact that removal of Key Personnel represented a material change to the contract, Defendant failed to disclose the information to the Court of Federal Claims and counsel for FirstLine during the bid protest period.

25.     The U.S. Court of Federal Claims issued its ruling on November 14, 2014, in favor of TSA. Defendant was granted Notice to Proceed on the MCI contract by TSA four days later, on November 18, 2014. Upon information and belief, Defendant used existing employees to fill the key management positions on the contract.

**Defendant's Questionable History Related to Security Screening Contracts**

26.     Based upon the information uncovered by Plaintiffs, and in the aftermath of their treatment at the hands of Defendant, Plaintiffs conducted research into Defendant's prior history with TSA and the Screening Partnership Program.

27.     In response to concerns about the SPP contract process, and the first MCI award in particular, the House Subcommittee on Transportation Security held two hearings in February 2012. Testimony by then-TSA Administrator John Pistole and MCI Airport Director Mark Van Loh revealed that one Richard M. Curasi had served as an advisor to Defendant during the MCI bid. Prior to his involvement with Defendant, Curasi had served

ROUSH ET. AL. V. AKAL GROUP OF COMPANIES, LLC D/B/A AKAL SECURITY, INC.
FIRST AMENDED COMPLAINT - 8

as the TSA Federal Security Director for MCI and Western Missouri from 2002 – 2008. Van Loh, in particular, expressed his concern to the Subcommittee, stating in part:

> "Well, they certainly did at the time, when he contacted my Mayor Pro Tem of Kansas City and told him his company was going to be taking over screening at Kansas City International 6 months before the award was made, I was very concerned."

28.     Curasi has stated publicly that he was employed by a company called "Corps Systems Group, LLC" headquartered in Albuquerque, New Mexico, while advising Defendant on MCI contract matters during 2010 - 2011. A search of the New Mexico Corporations registry shows that no such company existed; however, a "Corps <u>Services</u> Group, LLC" was active from 2010 – 2012. Corps Services Group, LLC shared the same physical and mailing address as Defendant's corporate headquarters. The company's organizer, Edward J. McDonald, was the Chief Marketing Officer at Akal from 2010 – 2012.

29.     Further, and upon information and belief, it appears that Defendant intended to use the same strategy in its effort to win an SPP contract at San Francisco International Airport (SFO) in 2014. A "Corps Services Group" was registered in the state of Texas, with Dwain Fuller as its principal. Fuller has stated publicly that he is a former advisor with Covenant Aviation Security, the incumbent security screening services provider at that airport.

30.     It is Plaintiffs' belief that the aforementioned facts, coupled with Defendant's actions giving rise to their claims, speak to Defendant's willingness to win TSA contracts by any means necessary.

### DAMAGES RESULTING FROM DEFENDANT'S ACTIONS

31.     As evidenced by their past experience as aviation security experts, Plaintiffs have relied upon their professional expertise to ask for and receive appropriate compensation for

their services. Therefore, it defies all reason to expect that Plaintiffs would permit Defendant to use their names and professional reputations in an aviation security bid proposal free of charge.

32.    The purported employment offers make it clear that Defendant was aware that Plaintiffs' names and reputations had intrinsic value. Defendant purported to offer Plaintiff Hunter a position as Deputy Project Manager by Defendant with an annual salary of $90,000 plus a $15,000 annual performance bonus. Plaintiff Hunter expected to execute the duties of the position for the five-year period of the contract, a total of $450,000.

33.    Defendant also purported to offer Plaintiff Roush a position as Training Manager by Defendant with an annual salary of $75,000 plus a $15,000 annual performance bonus. At all times, Plaintiff Roush expected to execute the duties of the position for the five-year period of the contract, a total of $375,000.

34.    However, Plaintiffs believe Defendant knew that its profit margin on the MCI contract would suffer if Defendant actually had to pay Plaintiffs over the five-year period. Defendant's 2012 bid on the MCI contract was $108.8 million. This figure was approximately $42 million *less* than its previous bid only one year earlier <u>for the same level of services at the same airport</u>. Plaintiffs believe that Defendant intended only to gain Plaintiffs' cooperation long enough to successfully win the contract and survive the inevitable subsequent FirstLine bid protest.

35.    Plaintiffs assert that, at all times, Defendant knew or should have known that it had a duty to compensate Plaintiffs at the time of the contract award for the use of their names and professional reputations. Plaintiffs further assert that Defendant's offers of employment

represented merely one possible form of compensation, and that rescinding said offers did not relieve Defendant's duty to compensate Plaintiffs.

## COUNT I
## INVASION OF PRIVACY (APPROPRIATION OF NAME OR LIKENESS)
## (TORT CLAIM)

36. Plaintiffs re-allege and incorporate herein by reference each and every allegation set forth above.

37. There are no other persons that share the same names and aviation security expertise as those of Plaintiffs. Defendant specifically contacted Plaintiffs because of their identities and expertise to obtain resumes and other information. Instead, Defendant informed Plaintiffs that offers of employment would be contingent upon contract award, but made no attempt to seek Plaintiffs' permission to use their names. Without Plaintiffs' consent, Defendant incorporated Plaintiffs' names and professional qualifications into the bid proposal presented to TSA.

38. It was only after the February 2014 contract award that Plaintiffs became aware that their names and professional credentials had been submitted as part of Defendant's bid. As a long-time Federal contractor, Defendant was familiar with contracting regulations and requirements. Further, Defendant had submitted a 2010 bid to TSA for the same airport. Defendant, therefore, knew or should have known prior to submitting its bid that the aviation security qualifications of Key Personnel would be a factor in any TSA security screening services contract award decision.

39. Defendant benefitted commercially from its use of Plaintiffs' names and reputations, as evidenced by its five-year MCI contract award valued at $108,878,523.97. Defendant

knew or should have known that they had a duty to compensate Plaintiffs for the use of their names and credentials, yet at no time did Defendant compensate Plaintiffs in any way.

40.     From March through September 2014, Defendant continued to ignore Plaintiffs' requests for some form of compensation. Finally, in their September 2014 letter to Defendant, Plaintiffs stated that, absent an agreement with Defendant, Plaintiffs would remove their names as Key Personnel. On October 14, 2014, Defendant responded by announcing that it was "reorganizing" the team, to include the elimination of Plaintiffs' purported positions.

41.     Prior to October 14, Plaintiffs were prepared to accept offers of employment as fair compensation for Defendant's use of their names in the bid proposal. Defendant's decision to rescind the employment offers and abruptly cease communication led Plaintiffs to conclude that Defendant had no intention to compensate them. Based upon Defendant's actions, Plaintiffs believed that the offers of employment had only been a ruse to avoid compensating them, and to deter Plaintiffs from acting on potential appropriation claims. Further, it became evident to Plaintiffs that Defendant's position in the protest action would have certainly been compromised had Plaintiffs withdrawn from the MCI contract during that time. Plaintiffs believe that, by perpetuating the ruse of future employment, Defendant was able to ensure that Plaintiffs would affirm their commitment to work on the MCI contract should questions from FirstLine's legal counsel arise during the Court of Federal Claims protest action.

42.     After examining Plaintiffs credentials, and as evidenced by the purported employment offers, Defendant knew or should have known both that Plaintiffs' names and credentials had value. Defendant deprived Plaintiffs of compensation to which they would

otherwise reasonably be entitled in exchange for their aviation security expertise.

43.     As a result of Defendant's acts or omissions, Plaintiffs suffered an appropriation of their names for commercial gain, entitling them to damages in amounts to be proven at trial.

## COUNT II
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (TORT OF OUTRAGE)

44.     Plaintiffs re-allege and incorporate herein by reference each and every allegation set forth above.

45.     Defendant's acts or omissions regarding the matter at issue in this Complaint were outrageous, showed reckless indifference to the rights and interests of Plaintiffs, and caused emotional distress to Plaintiffs over a period of several years.

46.     Plaintiffs were denied any form of compensation by Defendant. Each suffered severe emotional distress as a result of Defendant's conduct, entitling them to damages in amounts to be proven at trial.

## COUNT III
## UNJUST ENRICHMENT

47.     Plaintiffs re-allege and incorporate herein by reference each and every allegation set forth above.

48.     Under the belief that they were responding to a contingent job offer, Plaintiffs furnished their names and resumes to Defendant. Defendant had knowledge that Plaintiffs' credentials had value and would be beneficial in its efforts to obtain the MCI contract, as evidenced by its use of Plaintiffs' names in Defendant's MCI bid proposal.

48.     Despite the benefit gained by its use of Plaintiffs' names and credentials in the TSA bid evaluation process, Defendant made no effort to compensate Plaintiffs. Defendant's

ROUSH ET. AL. V. AKAL GROUP OF COMPANIES, LLC D/B/A AKAL SECURITY, INC.
FIRST AMENDED COMPLAINT - 13

favorable bid evaluation, which led to the subsequent MCI contract award, permitted Defendant to be unjustly enriched as a direct result.

49.    As a result of Defendant's unjust enrichment, Plaintiffs are entitled to restitution in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for a judgment against Defendant as follows:

1.    For an award of compensatory damages and restitution alleged herein, in amounts to be determined at trial;

2.    For an award of attorney's fees, expenses, and court costs as provided by law;

3.    For an award of such other and further relief, including equitable relief, as the court deems just and proper.

Dated this 22nd day of January, 2018.

| /s/ James H. Hunter | /s/ Ronald W. Roush |
|---|---|
| James H. Hunter | Ronald W. Roush |
| P.O. Box 1252 | 6706 S. Fanazick Pl. |
| Airway Heights, WA 99001 | Spokane, WA 99224 |
| (509) 230-7424 | (509) 230-7424 |
| james.hunter@avsec-sme.com | ron.roush@avsec-sme.com |
| Plaintiff Pro Se | Plaintiff Pro Se |

ROUSH ET. AL. V. AKAL GROUP OF COMPANIES, LLC D/B/A AKAL SECURITY, INC.
FIRST AMENDED COMPLAINT - 14

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of January, 2018, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following person(s):

**James H. Hunter**
Plaintiff, Pro Se

**William M. Symmes**
(wms@witherspoonkelley.com)
**Stanley F. Corbit**
(sfc@witherspoonkelley.com)
Attorneys for Defendant

      /s/  Ronald W. Roush
     Ronald W. Roush
     Plaintiff, Pro Se