FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 04, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RONALD W. ROUSH and JAMES H. HUNTER,<br><br>        Plaintiffs,<br><br>  v.<br><br>AKAL SECURITY, INC.,<br><br>        Defendant. | NO: 2:17-CV-358-RMP<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' AND COUNTER-DEFENDANTS' MOTION TO DISMISS COUNTERCLAIMS |

BEFORE THE COURT are motions by pro se Plaintiffs and Counter-Defendants Ronald Roush and James Hunter to dismiss Defendant and Counter-Plaintiff Akal Security, Inc.'s ("Akal's")[1] counterclaims for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and to stay discovery while the Motion to Dismiss is pending. ECF Nos. 77 and 78. Having reviewed the parties' filing regarding both motions, the remaining record, and the relevant law, the Court is fully informed.

---

[1] For clarity, the Court refers to the parties simply as Plaintiffs and Defendant for the remainder of this Order.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' AND COUNTER-DEFENDANTS' MOTION TO DISMISS COUNTERCLAIMS ~ 1

# NAMED DEFENDANT

As a preliminary matter, the Court addresses Defendant's contention in its Amended Answer that Akal Security, Inc. is the appropriate named Defendant in this action, rather than Akal Group of Companies, LLC. ECF No. 74 at 2. Defendant's Corporate Disclosure Statement indicates that:

> Akal Group of Companies, LLC ("AGC"), is a New Mexico Limited Liability Company with its principal place of business located in New Mexico. AGC is 100% wholly-owned by Akal Security, Inc. ("ASI"), a New Mexico corporation also located in New Mexico. ASI is 100% owned by KIIT Company, Inc., a Nevada corporation, with its principal place of business in New Mexico.

ECF No. 3 at 1.

Given that both Plaintiffs' Amended Complaint and Defendant's Amended Answer indicate that Akal Security, Inc. is the proper Defendant in this matter, the Court directs the Clerk to amend the caption to reflect the substitution. *See United Food & Commercial Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984) ("Even if the summons fails to name all of the defendants, dismissal is generally not justified absent a showing of prejudice . . . [f]or this reason, a defendant's answer and appearance in an action should be enough to prevent any technical error in form from invalidating the process.").

# BACKGROUND

This action concerns a bid that Akal submitted to the U.S. Transportation Security Administration ("TSA") in approximately 2013 for a contract to provide

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' AND COUNTER-DEFENDANTS' MOTION TO DISMISS COUNTERCLAIMS ~ 2

security screening services at Kansas City International Airport ("MCI") in Missouri. ECF Nos. 20 at 3−4; 74 at 4. Plaintiffs allege that Defendant interviewed Plaintiffs in approximately September 2012 for potential positions as management team members for a contract at MCI, and Plaintiffs understood at that time that "any formal offers of employment would be contingent upon contract award" by TSA to Akal. *Id.* at 5. When Defendant was awarded the contract in February 2014, Plaintiffs allegedly learned for the first time that Defendant had named Plaintiffs as "Key Personnel" in Defendant's bid to TSA. *Id.* at 6. Plaintiffs allege that Defendant indicated that a subcontractor, Synergy Solutions ("Synergy"), "would handle hiring and payroll for Plaintiffs' positions." *Id.* However, another company filed a protest to TSA's award of the contract to Defendant, and TSA issued a Stop-Work Order to Defendant. *Id.* According to the Amended Complaint, Defendant "immediately informed Plaintiffs that the contract was on hold until further notice." *Id.* This development posed a hardship for Plaintiff Hunter because he "had already broken his lease, sold household items and take[n] other steps to relocate from Spokane to Kansas City." *Id.* at 6−7.

Plaintiffs allege that in October 2014 they hired an attorney, who sent Synergy "a demand letter . . . in an effort to obtain some form of compensation for Plaintiffs." ECF No. 20 at 7. Synergy responded that "any offer of employment to Plaintiffs had been rescinded since the positions no longer existed[.]" *Id.* at 8. However, Plaintiffs allege that Defendant did not disclose during the bid protest that Plaintiffs would not

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' AND COUNTER-DEFENDANTS' MOTION TO DISMISS COUNTERCLAIMS ~ 3

be "Key Personnel," which Plaintiffs allege was a material change to the MCI contract. *Id.*

As alleged in the Amended Complaint, in November 2014, when the bid protest was resolved and TSA issued Defendant a Notice to Proceed on the MCI contract scope of work, Defendant did not hire Plaintiffs to fill any positions. ECF No. 20 at 8.

Plaintiffs assert the following claims: (1) invasion of privacy, through alleged appropriation of Plaintiffs' names without their consent; (2) intentional infliction of emotional distress or the tort of outrage; and (3) unjust enrichment. ECF No. 20 at 12−13.

Defendant filed an Amended Answer to Plaintiffs' Amended Complaint in which Defendant raises twenty affirmative defenses to Plaintiffs' alleged claims and states three counterclaims: (1) civil conspiracy; (2) tortious interference in a business expectancy; and (3) abuse of process by filing the instant lawsuit. ECF No. 74 at 12−27. Related to the counterclaims, Defendant alleges that Defendant intended to hire Plaintiffs, not because of their "notoriety within the industry, but at the insistence of a Project Manager whom Defendant had hired for the MCI contract." *Id.* at 18, 20. However, Defendant "no longer wished to work with Plaintiffs" after receiving what Defendant characterizes as a "threatening letter" from Plaintiffs' attorney during the bid protest. *Id*. at 18.

Defendant further alleges that six weeks after Defendant rescinded Plaintiffs' job offer, Plaintiffs formed their own company, AvSec SME, LLC, in a suburb of Kansas City, Missouri. *Id.* at 19. When registering to do business in Missouri, Plaintiffs described the company's purpose as "Consulting: Securities Services." ECF Nos. 74 at 19; 74-3 at 1. Defendant alleges that Plaintiffs registered their company in Missouri to position themselves to compete for the work at MCI. ECF No. 74 at 19. Defendant also alleges that Plaintiffs' objective in filing the instant lawsuit was "to damage Akal's reputation in the industry" and "to threaten Akal and to improperly obtain information that would enable Plaintiffs to unfairly compete with Akal." *Id.* at 20.

Toward that end, Defendant asserts that Plaintiffs have sought discovery regarding sensitive financial information that is unrelated to their claims. ECF No. 74 at 21. Defendant further alleges that Plaintiffs have proceeded in this litigation pro se, "despite the fact that, upon information and belief, Plaintiffs have consulted counsel in this lawsuit." *Id.* at 23. Defendant contends that Plaintiffs' pro se status eliminates the option for Akal to provide sensitive documents to Plaintiffs' counsel to use in litigation without disclosing the information to Plaintiffs to use in their business to compete. *Id.* at 23−24. Moreover, Defendant alleges that Plaintiffs have filed discovery motions without previously conferring with Defendant in good faith and have engaged in "numerous instances of conduct that appear to have been done solely for the purpose of causing additional expense to Akal." *Id.* at 22.

# LEGAL STANDARD

Complaints filed in federal court must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a counter-defendant challenges the sufficiency of a counterclaim under Fed. R. Civ. P. 12(b)(6), the court must determine whether the challenged pleading bears "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In deciding a Rule 12(b)(6) motion to dismiss, a court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marin Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Ninth Circuit has articulated a two-part rule to govern allegations generally in a complaint or counterclaim:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2012).

# DISCUSSION

**Washington's Anti-SLAPP Statute**

Plaintiffs first assert that they are immune from Defendant's counterclaims under Washington's statute limiting "strategic lawsuits against public participation," or "SLAPPs." ECF No. 77 at 3.

Under Revised Code of Washington ("RCW") § 4.24.510 a "person who communicates a complaint or information to a branch or agency of the federal, state, or local government . . . is immune from civil liability for claims based upon the communication to the agency . . . regarding any matter reasonably of concern to that agency . . . ." RCW § 4.24.510. "A SLAPP primarily involves 'communications made to influence a governmental action or outcome.'" *Right-Price Rec. v. Connells Prairie Cmty. Council*, 146 Wn.2d 370, 382 (2002) (quoting George W. Pring & Penelope Canan, *SLAPPs: Getting Sued for Speaking Out* 8 (1996)).

The provision at RCW § 4.24.510 was the first anti-SLAPP provision enacted in the United States and took effect in 1989. *Symposium: The First Amendment in the Modern Age: Essay: A View from the First Amendment Trenches: Washington State's New Protections for Public Discourse and Democracy*, 87 Wash. L. Rev. 495, 497 (2012). The intent of the statute is "to protect free speech rights." *Segaline v. Dep't of Labor & Indus.*, 169 Wn.2d 467, 472−73 (Wash. 2010).

"Immunity under § 4.24.510 does not require a showing of good faith[.]" *Phoenix Trading, Inc. v. Loops LLC*, 732 F.3d 936 (2013) (citing *Bailey v. State*, 147

Wn. App. 251 (Wash. Ct. App. 2008)). If a person successfully raises the anti-SLAPP statute's immunity defense, he "is entitled to recover expenses and reasonable attorneys' fees incurred in establishing the defense and in addition shall receive statutory damages of ten thousand dollars." RCW § 4.24.510. "Statutory damages may be denied if the court finds that the complaint or information was communicated in bad faith." *Id.*

Plaintiffs assert that all of Defendant's counterclaims are "based entirely upon Plaintiffs' communications with the Court; specifically, their lawsuit against Akal." ECF No. 77 at 3. Defendant responds that Washington's anti-SLAPP statute does not apply to "personal, individualized employment disputes." ECF No. 80 at 6. Instead, Defendant asserts, anti-SLAPP protection from civil liability applies only in situations involving a substantive issue of public concern. ECF No. 80 at 4–6.

For support for the argument that RCW § 4.24.510 is inapplicable, Defendant cites to the legislative history of a broader anti-SLAPP statute, RCW § 4.24.525, that was enacted in 2010 and invalidated by the Washington Supreme Court in 2015. *See* ECF No. 80 at 4; *Davis v. Cox*, 183 Wn.2d 269, 351 (Wash. 2015) (leaving intact the narrower and well-established RCW § 4.24.510). Defendant also relies on the Washington Supreme Court's decision in *Right-Price* to argue that three prerequisites must be satisfied for anti-SLAPP immunity to apply: "'a communication to influence a governmental action results in (a) a civil complaint or counterclaim (b) filed against nongovernmental individuals or organizations . . . on (c) <u>a substantive</u>

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' AND COUNTER-DEFENDANTS' MOTION TO DISMISS COUNTERCLAIMS ~ 8

<u>issue of some public interest or social significance</u>.'" ECF No. 80 at 4 (quoting *Right-Price*, 146 Wn.2d at 382 (internal citation omitted and emphasis added by Defendant)).

Defendant's argument that Plaintiffs fail to meet this low threshold of demonstrating that their communications touch on a "a substantive issue of some public interest or social significance" is unpersuasive. *See Segaline v. Dep't of Labor & Indus.*, 169 Wash. 2d 467, 481−82 (2010) (C.J. Madsen, concurring) ("Indeed, the plain language of the statutes shows that the term 'communications' is broadly intended."). Plaintiffs' allegations in their Amended Complaint filed in this Court question the integrity of a process that resulted in a contract for providing security services at a public airport. *See* ECF No. 20 at 5−8. Defendant cites to Plaintiffs' actions after the award of the contract, in addition to Plaintiffs' alleged actions regarding discovery, as part of the basis for Defendant's counterclaims of civil conspiracy, tortious interference, and abuse of process. *See* ECF No. 80 at 10.

Through its own research, the Court has identified Washington caselaw that has held that the filing of a lawsuit does not qualify as protected communication under RCW § 4.24.510 because "[a] plaintiff who brings a private lawsuit for private relief is not seeking official government action, but rather redress from the court." *Saldivar v. Momah*, 145 Wn. App. 365, 387 (Wash. App. 2008), *review denied*, 165 Wn.2d 1049 (2009). In that case, a woman and her spouse complained to the state Medical Quality Assurance Commission ("MQAC") and the police that the woman's

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' AND COUNTER-DEFENDANTS' MOTION TO DISMISS COUNTERCLAIMS ~ 9

physician had sexually assaulted her during office visits. 145 Wn. App. at 373. The couple then filed a suit against the physician for negligence, lack of informed consent, breach of fiduciary duty, violation of the Consumer Protection Act, ch. 19.86 RCW, and outrage. 145 Wn. App. at 373−74. The physician defendant filed counterclaims of abuse of process, negligent infliction of emotional distress, and outrage. 145 Wn. App. at 375. The trial court ultimately determined that plaintiff's claims were not credible and entered judgment in favor of the physician for abuse of process and outrage. 145 Wn. App. at 386. Plaintiffs appealed and argued that because the physician's counterclaims had arisen from their complaints to the MQAC, they were entitled to immunity from liability on the counterclaims under RCW § 4.24.510. *Id.*

The Washington Court of Appeals, Division II, distinguished between the lawsuit and the earlier complaints to the MQAC and the police:

> While RCW [§] 4.24.510 protects the Saldivars from liability arising from actions taken by MQAC or police in response to their complaints, it is not applicable to private lawsuits for private relief; the Saldivars are not immune from liability for that portion of the judgment related to the filing of the lawsuit.
> . . .
> Here, although RCW [§] 4.24.510 covers [plaintiff's] complaint to the MQAC and the police, once the Saldivars became private plaintiffs seeking private relief, they ceased to be among the class of person who can claim protection from liability under RCW [§] 4.24.510.

145 Wn. App. at 386−87.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' AND COUNTER-DEFENDANTS' MOTION TO DISMISS COUNTERCLAIMS ~ 10

Two subsequent cases distinguished the holding of *Saldivar* on the basis that the second Washington anti-SLAPP provision codified at RCW § 4.24.525 in 2010 expressly included counterclaims as a type of SLAPP suit from which a person in a lawsuit seeking private relief may be immune. *Bevan v. Meyers*, 183 Wn. App. 177, 185 n. 5 (Wash. App. 2014) ("The [defendants] mistakenly rely on [*Saldivar*] to argue that counterclaims are not subject to the anti-SLAPP statute. . . . Unlike the version of the statute in *Saldivar*, the current version expressly includes counterclaims in the class of claims subject to regulation) (citing RCW 4.24.525(1)(a) (defining "claim" to include a "counterclaim")); *Townsend v. State*, No. 42321-9-II, 2012 Wash. App. LEXIS 2221, at *10−13 (Ct. App. Sep. 18, 2012) (unpublished opinion). However, since the Washington Supreme Court invalidated that second statute in its entirety on constitutional grounds, the holding of *Saldivar* precluding immunity from counterclaims based on communications to a court in a lawsuit "for private relief" again appears to be controlling. *See Davis*, 183 Wn.2d at 351; *Saldivar*, 145 Wn. App. at 387.

It is not clear as a matter of law that Plaintiffs' communications in the context of the instant lawsuit fall within the class of communications that support anti-SLAPP immunity. Therefore, the Court does not dismiss Defendant's counterclaims on the basis that Plaintiffs are immune from liability.

Plaintiffs also challenge whether Defendant's counterclaims are based on sufficient factual allegations to support an inference that Plaintiffs are liable for the misconduct alleged. ECF No. 77 at 4−8; *see Iqbal*, 556 U.S. at 678.

**Tortious Interference**

In Washington, a claim of tortious interference with a business expectancy is comprised of the following elements: "(1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage." *Stuc-O-Flex Int'l, Inc. v. Low & Bonar, Inc.*, No. 2:18-cv-1386-RAJ, 2019 U.S. Dist. LEXIS 167035, at * 11, 2019 WL 4688803 (W.D. Wash. Sept. 26, 2019) (citing *Monotype Corp. PLC v. Int'l Typeface Corp.*, 43 F.3d 443, 455 n. 11 (9th Cir. 1994); *Leingang v. Pierce Cty. Med. Bureau, Inc.*, 131 Wn.2d 133 (Wash. 1997)).

Plaintiffs contend that Defendant has not alleged "any facts concerning prospective contracts or relationships that would point to the existence of a business expectancy." ECF No. 77 at 5. Plaintiffs further argue that Defendant has not alleged that Plaintiffs have interfered with the existing MCI contract, but rather defined Defendant's expectancy as an intent to expand its presence in the aviation security market. *Id.* (citing ECF No. 74 at 26). Plaintiffs additionally claim that

Defendant has not alleged "specific facts that Plaintiffs' actions hindered or denied Akal's ability to seek new business." *Id*.

With respect to the damages element, Defendant responds simply, "Akal's business has suffered as a result [of Plaintiffs' conduct, including their conduct in this litigation]." ECF No. 80 at 11. Defendant further argues that specific facts that it alleged in support of its counterclaims support tortious inference, including "threats against Akal's reputation that clearly indicate that Plaintiffs had spoken to others, including the media, about Akal." *Id.*

Plaintiffs are correct that Defendant's Amended Answer lacks an allegation of pecuniary damage or any specific allegation of injury to its reputation as a result of any alleged tortious interference with Defendant's alleged business expectancy. *See* ECF No. 74 at 26. Therefore, the Court dismisses this counterclaim. However, because the deficiency in the pleading could possibly be cured by the allegation of other facts, the Court grants Defendant leave to amend. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).

### *Abuse of Process*

An abuse of process claim demands two essential elements: "(1) the existence of an ulterior purpose—to accomplish an object not within the proper scope of the process—and (2) an act in the use of legal process not proper in the regular prosecution of the proceedings." *Fite v. Lee*, 11 Wn. App. 21, 27 (Wash. App.), *review denied*, 84 Wn.2d 1005 (1974). "The mere institution of a legal proceeding

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' AND COUNTER-DEFENDANTS' MOTION TO DISMISS COUNTERCLAIMS ~ 13

even with a malicious motive does not constitute an abuse of process." *Id.* at 27–28. Rather, "[t]he crucial inquiry in abuse of process claims is . . . 'whether the judicial system's process, made available to insure the presence of the defendant or his property in court, has been misused to achieve another, inappropriate end.'" *Maytown Sand & Gravel, LLC v. Thurston Cty.*, 191 Wn.2d 392, 439 (Wash. 2018) (quoting *Gem Trading Co. v. Cudahy Corp.*, 92 Wn.2d 956, 963 n.2 (1979)).

Defendant's counterclaim is based on an assertion of an ulterior motive by Plaintiffs to "damage Akal's reputation in the industry" and "to threaten Akal and to improperly obtain information that would enable Plaintiffs to unfairly compete with Akal." ECF No. 74 at 20. In addition, Defendant alleges acts "in the use of legal process not proper in the regular prosecution of the proceedings." *Fite*, 11 Wn. App. At 27. For instance, filing a motion for discovery without first conferring with the opposing party in a good faith effort to resolve the dispute and seeking discovery that is not relevant to a party's claim or defense are outside of the proper prosecution of a civil claim. *See* Fed. R. Civ. P. 26(b)(1); 37(a)(1). Therefore, Defendant's allegations are sufficient to state a claim for abuse of process, and the claim survives this motion.

### *Civil Conspiracy*

To ultimately prevail on a claim for civil conspiracy, a plaintiff "'must prove by clear, cogent, and convincing evidence that (1) two or more people combined to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' AND COUNTER-DEFENDANTS' MOTION TO DISMISS COUNTERCLAIMS ~ 14

unlawful means; and (2) the conspirators entered into an agreement to accomplish the conspiracy.'" *Puget Sound Sec. Patrol v. Bates*, 197 Wn. App. 461, 470 (Wash. App. 2017) (quoting *All Star Gas, Inc. v. Bechard*, 100 Wn. App. 732, 740 (2000)). "'Mere suspicion or commonality of interests is insufficient to prove a conspiracy.'" *Id.* (quoting *All Star Gas*, 100 Wn. App. at 740) (internal quotation omitted)).

Plaintiffs assert that Defendant's civil conspiracy cannot survive independently of Defendant's abuse of process claim, which Plaintiffs argue is not supported by sufficient facts in the Amended Answer. ECF Nos. 77 at 4; 85 at 6 (citing *Gossen v. JPMorgan Chase Bank*, 819 F. Supp. 2d 1162, 1171 (W.D. Wash. 2011)). Defendant responds that the following allegations are sufficient to state a civil conspiracy claim: (1) Plaintiffs registered their company to do business from an office "thirty minutes from MCI airport" within weeks of Akal rescinding Plaintiffs' employment offer; and (2) Plaintiffs have sought, during the course of this lawsuit, "information that only a potential investor or someone competing in the aviation security industry would want[,]" reflecting an alleged effort "to obtain [Defendant's] confidential and proprietary information, as well as to cause damage to Akal by filing baseless claims." ECF No. 80 at 10−11.

The Court finds that Defendant has alleged sufficient facts that, if proven true, permit an inference that Plaintiffs have had a meeting of the minds regarding an objective to obtain information from Defendant otherwise unavailable to Plaintiffs and which would be advantageous to Plaintiffs in competing with Defendant and to

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' AND COUNTER-DEFENDANTS' MOTION TO DISMISS COUNTERCLAIMS ~ 15

cause Defendant to incur costs. Therefore, the Court finds that the civil conspiracy claim is adequately pleaded and does not dismiss Defendant's civil conspiracy counterclaim under Fed. R. Civ. P. 12(b)(6).

Having found that Plaintiffs are not immune from liability on the counterclaims under RCW § 4.24.510, and Defendant has sufficiently alleged its abuse of process and civil conspiracy counterclaims for purposes of Fed. R. Civ. P. 12(b)(6), the Court denies Plaintiffs' Motion to Dismiss with respect to those two claims. The Court grants in part Plaintiffs' Motion to Dismiss with respect to Defendant's tortious interference counterclaim; however, Defendant shall be allowed an opportunity to amend. Furthermore, the Court denies as moot Plaintiff's Motion to Stay discovery related to the counterclaims during the pendency of the Motion to Dismiss, as the Motion to Dismiss has now been resolved.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiffs' Motion to Dismiss Counterclaims, **ECF No. 77**, is **GRANTED IN PART and DENIED IN PART**.

2. Defendant's tortious interference claim is **DISMISSED WITH LEAVE TO AMEND**. Defendant shall file any Second Amended Answer within **30 days of the date of this Order**.

3. Plaintiffs' Motion to Stay, **ECF No. 78**, is **DENIED AS MOOT**.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' AND COUNTER-DEFENDANTS' MOTION TO DISMISS COUNTERCLAIMS ~ 16

4. The District Court Clerk is directed to update the docket to reflect that the named Defendant is Defendant Akal Security, Inc. rather than Akal Group of Companies, LLC.

The District Court Clerk is directed to enter this Order and provide copies to Plaintiffs and counsel.

**DATED** February 4, 2020.

> *s/ Rosanna Malouf Peterson*
> ROSANNA MALOUF PETERSON
> United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' AND COUNTER-DEFENDANTS' MOTION TO DISMISS COUNTERCLAIMS ~ 17