FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 09, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RONALD W. ROUSH and JAMES H. HUNTER,<br><br>Plaintiffs,<br><br>v.<br><br>AKAL SECURITY, INC,<br><br>Defendant. | NO:  2:17-CV-358-RMP<br><br>ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION AND DENYING PLAINTIFFS' PARTIAL SUMMARY JUDGMENT MOTION |

BEFORE THE COURT is a Motion for Partial Summary Judgment from Plaintiffs Ronald Roush and James Hunter, ECF No. 86, and a Motion for Summary Judgment from Defendant Akal Security, Inc. ("Akal"), ECF No. 113, and the parties' Stipulated Voluntary Dismissal of Counterclaims, ECF No. 132.  The Court has reviewed the parties' filings with respect to all motions, the remaining record, the relevant law, and is fully informed.

**BACKGROUND**

Unless otherwise noted, the following background facts are undisputed.  On July 23, 2012, the United States Transportation Security Administration ("TSA")

issued Solicitation number HSTS05-12-R-SPP038 (the "Solicitation") for security

services at the Kansas City International Airport ("MCI") in Missouri.  ECF No. 108

at 2.  Plaintiffs contend that Akal contacted them by telephone on or around

September 5, 2012, to solicit their names and professional qualifications for purposes

of submitting a bid in response to the Solicitation.  ECF No. 112 at 4; *see also* ECF

Nos. 31-1 and 31-2.  Defendant maintains that Defendant already had Plaintiffs'

names, but does not dispute that Defendant and its subcontractor, AWD Management

Services, Inc. ("AWD") contacted Plaintiffs for telephone interviews to "determine

whether to offer Plaintiffs a position to work at MCI."  ECF No. 108 at 3.

Subsequent to Plaintiffs' telephone conversations with Akal and AWD

representatives, on or around September 5, 2012, Roush and Hunter submitted their

resumes, detailing their experience in the aviation security field, to Akal via

subcontractor AWD.  ECF Nos. 86-4 at 1; 86-5 at 1; and 108 at 3.

Akal submitted its bid proposal to TSA on or before the submission deadline

of March 4, 2013.  ECF Nos. 74 at 4; 112 at 4.  Akal's bid proposal contained

Plaintiffs' names and professional qualifications as proposed "Key Personnel."  ECF

No. 112 at 4–5.

TSA awarded the MCI contract to Akal on February 24, 2014.  ECF Nos. 20

at 5; 74 at 5.  Through a different subcontractor, Synergy Solutions, Inc.

("Synergy"), Akal hired Plaintiffs for their respective positions at MCI.  ECF Nos.

74 at 18; 86-14; and 86-15.

ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION AND
DENYING PLAINTIFFS' PARTIAL SUMMARY JUDGMENT MOTION ~ 2

Plaintiffs both declare for purposes of these motions that they became aware that Akal had used their names and credentials in its bid proposal on February 24, 2014, when they reviewed the MCI contract award and saw that they were included in Section 1.7, "Key Personnel and Facilities." ECF Nos. 86-4 at 1; 86-5 at 1. Both Plaintiffs declare that they did not give Akal consent to use their names and credentials in its bid proposal. *Id.* Plaintiff Roush testified at deposition that "arguably" he would have "been okay" with his name and credentials being included in the bid proposal had he and Hunter "gone ahead and worked on the project." ECF No. 125-1 at 14.

By mid-March 2014, a competitor of Akal's filed a protest contesting the award of the contract to Akal, and TSA issued a stop work order delaying the start of the contract. ECF Nos. 74 at 18; 125-1 at 16−17. Plaintiffs were aware of the protest and understood that Akal could not start working on the MCI project until the stop work order was removed. *See* ECF Nos. 116-12 at 1; 125-1 at 14. Plaintiffs did not receive compensation from Akal before or after the contract award on February 24, 2014. Email correspondence from the President of Synergy to Plaintiffs dated March 19, 2014, indicates that Plaintiffs were exploring avenues of receiving income from Akal during the bid protest, and Synergy was open to that discussion. ECF No. 109-9. Similarly, Roush recalled a conversation with the Synergy President from early August 2014, in which she agreed to submit to Akal the

ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION AND DENYING PLAINTIFFS' PARTIAL SUMMARY JUDGMENT MOTION ~ 3

transition expenses that Plaintiffs believed should be allowable, asserting that she could make no promises.  ECF No. 109-1 at 14.

At some point in August 2014, Plaintiffs consulted with a lawyer about the possibility of pursuing legal action against Akal.  ECF Nos. 116-2 at 14; 116-3 at 1−2.  Roush testified at his deposition that Plaintiffs' inquiry with an attorney was precipitated by "the fact that [Plaintiffs] were named as key personnel and had essentially been in limbo for, at this point . . . five months, six months, since the stop work order had been put into place . . . ."  ECF No. 116-2 at 15.

In a letter to Akal's subcontractor Synergy dated September 5, 2014, Plaintiffs' then-counsel[1] conveyed "the sense of disappointment [his] clients share in having to retain legal counsel to resolve their grievances over what has transpired thus far with their employment relationship with Synergy."  ECF No. 109-2 at 1. Plaintiffs' counsel expanded that Plaintiffs believed, at the time of the letter, that Synergy should have taken a "pro-active position in securing their continued commitment" to Synergy with respect to the MCI security contract, but instead had "inappropriately shifted" "certain inequities and burdens" to Plaintiffs, causing them "significant financial hardships" waiting for a start date while the protest proceeded at the United States Court of Claims.  *Id.* at 1−2.  Plaintiffs' counsel conveyed that

---

[1] Plaintiffs have not appeared through counsel in the present litigation and instead have represented themselves from the outset.  *See* ECF No. 1-1 at 17.

ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION AND DENYING PLAINTIFFS' PARTIAL SUMMARY JUDGMENT MOTION ~ 4

the status quo at the time of the letter was "unacceptable" to Plaintiffs, and "if

suitable agreements cannot be reached that resolve all my clients' issues, they will

have no alternative but to revoke their acceptance of employment, and to actively

seek employment with organizations that will better appreciate their expertise." *Id.*

at 2.   The September 5, 2014 letter from Plaintiffs' counsel alleged no misconduct

by Akal in naming Plaintiffs as key personnel in the bid, but asserted that including

Plaintiffs as key personnel risked certain ramifications for Synergy and Akal:

> Of course upon the revocation of their acceptance of employment,
> Synergy will be required to inform the Contracting Officer that the Key
> Personnel identified in the Bid Contract have changed. I cannot say
> with any certainty that such notice will void the Bid, but it is certainly
> likely that such change will delay the award while new Key Personnel
> are located and the appropriate vetting process is completed. I should
> think the potential for another Stop Order is a distinct possibility as
> well.  I present my clients [sic] intentions without cloud of threat, and
> they should not be received as such.   However, my clients'
> circumstances have left them little alternative but to place the issues
> squarely before Synergy so that it can do what it must do under the
> circumstances. Stated another way, my clients are going to make certain
> business decisions that are in their best interests. They expect no less
> from Synergy and Akal.  Should Synergy and Akal find it in their best
> interests to reach an agreement with Messrs. Hunter and Roush that will
> keep them as Key Personnel, my clients are amenable to reaching
> agreements to all's mutual benefit.
>
> . . . The uncertainty that the parties find themselves in is directly related
> to the lack of a written agreement that could have provided for the types
> of contingencies that currently exist.  Synergy made a business decision
> not to enter into an employment contract with my clients.  I presume
> that the risks of employment contracts were outweighed by the benefits
> of at-will employment.  It would seem obvious now that bidding on a
> hundred million dollar plus contract without having your Key
> Personnel under contract was a risk that was either not considered, or
> considered and not fully appreciated. Whatever difficulties Synergy

ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION AND
DENYING PLAINTIFFS' PARTIAL SUMMARY JUDGMENT MOTION ~ 5

may suffer should my clients removed [sic] themselves as Key Personnel, are the result of prior business decisions it has made, and not the consequences of the business decisions my clients now contemplate. Synergy has demonstrated no sense of equitable compassion for the circumstances in which it has placed Mr. Hunter and Mr. Roush. All understanding they have given Synergy as their prospective employer has been exhausted. There remains only the question of whether the difficulties can be overcome through good faith discussions.

*Id.* at 3.

Synergy responded to Plaintiffs' counsel's September 5, 2014 letter through its counsel on October 8, 2014. ECF No. 74-1 at 1. In that letter, Synergy "rescinded" Plaintiff's employment offers, after Akal "reorganized the structure of the team." *Id.*

The Court of Federal Claims resolved the bid protest in TSA's favor on November 14, 2014, and TSA issued Akal a Notice to Proceed with the MCI security contract approximately four days later. ECF Nos. 20 at 8; 74 at 7. Viewing the facts in the light most favorable to Plaintiffs, Roush and Hunter were still included as key personnel under the contract award at the time that the Court of Federal Claims resolved the bid protest. *See* ECF No. 116-11. However, by February 3, 2015, TSA substituted individuals other than Plaintiffs as key personnel in the MCI contract with Akal. *See* ECF No. 116-5 at 1, 6.

Plaintiffs filed their original Complaint in Spokane County Superior Court on September 20, 2017. ECF No. 1-1. Plaintiffs included two tort claims in their initial pleading: (1) invasion of privacy or appropriation of a name or likeness; and (2)

ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION AND DENYING PLAINTIFFS' PARTIAL SUMMARY JUDGMENT MOTION ~ 6

outrage or intentional infliction of emotional distress.  After Defendant removed

Plaintiffs' complaint to federal court, Plaintiffs filed a First Amended Complaint on

April 10, 2018, that added a third Washington state law claim: unjust enrichment.

ECF No. 20 at 11−14.  Plaintiffs seek compensatory damages, attorney's fees and

costs, and other relief, including equitable relief, as the Court finds to be just and

proper.  *Id.* at 15.  Defendant consented to Plaintiffs' amendment of their complaint

to add a new cause of action.  ECF No. 19.

Defendant filed an Amended Answer to Plaintiffs' First Amended Complaint

in which Defendant raised twenty affirmative defenses to Plaintiffs' alleged claims

and stated three counterclaims: (1) civil conspiracy; (2) tortious interference in a

business expectancy; and (3) abuse of process by filing the above-captioned lawsuit.

ECF No. 74 at 12−27.  In resolving a Motion to Dismiss Defendant's counterclaims

by Plaintiffs, the Court dismissed with leave to amend Defendant's tortious

interference counterclaim and allowed Defendant's abuse of process and civil

conspiracy counterclaims to proceed.  ECF No. 93.  Defendant did not amend its

tortious interference counterclaim.

Through the instant motions: Plaintiffs seek summary judgment against

Defendant on Plaintiffs' claim of appropriation, ECF No. 86 at 1; Defendant seeks

summary judgment dismissal of all of Plaintiffs' claims, ECF No. 113 at 1; and the

parties agree that Defendant's remaining counterclaims shall be dismissed without

prejudice and without cost shifting or an award of fees, ECF No. 132 at 2.

ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION AND
DENYING PLAINTIFFS' PARTIAL SUMMARY JUDGMENT MOTION ~ 7

## LEGAL STANDARD

When parties file cross-motions for summary judgment, the Court considers each motion on its own merits. *See Fair Housing Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). A court may grant summary judgment where "there is no genuine dispute as to any material fact" of a party's prima facie case, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A genuine issue of material fact exists if sufficient evidence supports the claimed factual dispute, requiring "a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). A key purpose of summary judgment "is to isolate and dispose of factually unsupported claims." *Celotex*, 477 U.S. at 324.

The moving party bears the burden of showing the absence of a genuine issue of material fact, or in the alternative, the moving party may discharge this burden by showing that there is an absence of evidence to support the nonmoving party's prima facie case. *Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party to set forth specific facts showing a genuine issue for trial. *See id.* at 324. The nonmoving party "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 322 n.3 (internal quotations omitted).

ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION AND DENYING PLAINTIFFS' PARTIAL SUMMARY JUDGMENT MOTION ~ 8

1   The Court will not infer evidence that does not exist in the record.  *See Lujan*

2   *v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).  However, the Court will

3   "view the evidence in the light most favorable" to the nonmoving party.  *Newmaker*

4   *v. City of Fortuna*, 842 F.3d 1108, 1111 (9th Cir. 2016).  "The evidence of the non-

5   movant is to be believed, and all justifiable inferences are to be drawn in his favor."

6   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

7                                         **DISCUSSION**

8        ***Statute of Limitations***

9        Federal courts exercising diversity jurisdiction apply state law to determine

10  when a cause of action accrues on state law claims.  *Walker v. Armco Steel Corp.*,

11  446 U.S. 740, 751 (1980) (holding that whether a complaint tolls the applicable

12  statute of limitations is controlled by state law); *see also Norco Construction, Inc. v.*

13  *King Cty.*, 801 F.3d 1143, 1145 (9th Cir. 1986).  This action is before the Court

14  based on diversity jurisdiction.  *See* ECF No. 1 at 3; 28 U.S.C. §§ 1332, 1446.

15       In Washington State, "actions can only be commenced . . . after the cause of

16  action has accrued."  Revised Code of Washington ("RCW") § 4.16.005.  A cause of

17  action accrues when "the plaintiff discovers, or in the reasonable exercise of

18  diligence should discover, the elements of the cause of action."  *1000 Virginia Ltd.*

19  *P'ship v. Vertecs Corp.*, 158 Wn.2d 566, 575−76 (2006).  When a harm reasonably

20  goes unnoticed, the statute does not run until the plaintiff discovered the damage.

21  *See Gazija v. Nicholas Jerns Co.*, 86 Wn.2d 215, 219−20 (1975).  The discovery rule

ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION AND
DENYING PLAINTIFFS' PARTIAL SUMMARY JUDGMENT MOTION ~ 9

applies only in cases where the plaintiff did not know, or could not know, that a cause of action had accrued. *In re Estates of Hibbard*, 118 Wn.2d 737, 743 n. 15 (1992).

Washington's catch-all statute of limitations, RCW § 4.16.130, is two years. Likewise, RCW § 4.16.100 provides, in relevant part, that actions for libel, slander, assault, assault and battery, or false imprisonment must be brought within two years. However, the Washington Court of Appeals recently held that the three-year statute of limitations provided by RCW § 4.16.080 applies to an invasion of privacy by publication claim because it does not include intent as an essential element. *Emeson v. Dep't of Corr.*, 194 Wn. App. 617, 638−39 (Wash. Ct. App. 2016); *see also* RCW § 4.16.080(2) (providing a three-year limitations period for actions "for taking, detaining, or injuring personal property . . . or for any other injury to the person or rights of another not hereinafter enumerated") and (3) (providing a three-year limitations period for actions "upon a contract or liability, express or implied, which is not in writing, and does not arise out of any written instrument").

Defendant argues that all three of Plaintiffs' claims are barred by a three-year statute of limitations. ECF No. 113 at 2. Defendant contends that Plaintiffs were aware no later than February 24, 2014, that Defendant had included Plaintiffs' names in the bid proposal, but filed this lawsuit over three years later, on September 20, 2017. *Id.* Plaintiffs counter that all of their claims are timely because Plaintiffs definitively learned that Defendant did not intend to compensate them for the use of

ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION AND DENYING PLAINTIFFS' PARTIAL SUMMARY JUDGMENT MOTION ~ 10

their names when Defendant rescinded the offers of employment on October 8, 2014.  ECF No. 118 at 2.

The Court addresses the timeliness of each of Plaintiffs' claims alongside the parties' merits arguments regarding the elements of each claim, as the issues are intertwined.

### Invasion of Privacy by Appropriation

Plaintiffs allege in the first count of their First Amended Complaint that Defendant invaded their privacy by appropriating their names or likenesses when Defendant incorporated their names and professional qualifications into the bid proposal without Plaintiffs' consent.  ECF No. 20 at 11.

Washington State recognizes a common law right of privacy, and individuals may bring a tort claim for invasion of that right.  *Reid v. Pierce Cty.*, 136 Wn.2d 195, 206 (Wash. 1998).  Misappropriation of one's name or likeness is one of four distinct theories by which an invasion of privacy claim may be pursued; the other theories of invasion of privacy include intrusion, disclosure, and false light. *Eastwood v. Cascade Broadcasting Co.*, 106 Wn.2d 466, 469 (Wash. 1986) *see also* Restatement (2d) of Torts § 652A (1977) (reciting the same four privacy torts).

To prevail on an invasion of privacy by appropriation claim, a plaintiff must show that defendant appropriated the plaintiff's name or likeness to defendant's own use or benefit.  Restatement (2d) of Torts § 652C (1977); *see also Aronson v. Dog Eat Dog Films, Inc.*, 738 F. Supp. 1104, 1113 (W.D. Wash. 2010) (referencing

Restatement (2d) of Torts §§ 652A-E (1977) for the elements of a Washington state appropriation claim).  The applicable statute of limitations for an invasion of privacy by appropriation claim is no longer than three years.  *See Emeson*, 194 Wn. App. 617 (Wash. Ct. App. 2016); *see also* RCW § 4.16.080(2) (providing a three-year limitations period for actions "for taking, detaining, or injuring personal property . . . or for any other injury to the person or rights of another not hereinafter enumerated").

With respect to whether Plaintiffs' common law invasion of privacy by appropriation claim is timely, Defendant proposes that the claim accrued either on February 24, 2014, the date on which Plaintiffs acknowledge they were aware Defendant had used their names and credentials on the bid proposal, or by August 2014, the time by which Plaintiffs were consulting with an attorney regarding potential legal action against Defendant.  ECF No. 123 at 5.  Plaintiffs posit that having received employment offers from subcontractor Synergy in March 2014, Plaintiffs had no way of knowing before Synergy rescinded the offers on October 8, 2014, that Defendant did not intend to compensate Plaintiffs.   ECF No. 118 at 5.

The Court finds that whether Defendant planned to rescind Plaintiffs' employment offer is immaterial to the challenged action of whether Defendant used Plaintiffs' names and credentials to secure the MCI contract with the TSA.  Plaintiffs themselves assert that their "contention has always been that Akal appropriated their names and credentials to win the TSA MCI contract[.]"  ECF No. 118 at 4 (citing

ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION AND DENYING PLAINTIFFS' PARTIAL SUMMARY JUDGMENT MOTION ~ 12

First Amended Complaint). Moreover, an appropriation claim turns entirely on whether Defendant is liable for using Plaintiffs' names and credentials for Defendant's own use or benefit. *See* Restatement (2d) of Torts at § 652C. The contract was awarded to Akal on February 24, 2014, and Plaintiffs were aware that their names and credentials were included on the bid proposal that same date. ECF Nos. 86-4 at 1; 86-5 at 1.[2] Therefore, the invasion of privacy by appropriation claim accrued by February 24, 2014, while Plaintiffs filed their original complaint on September 20, 2017, more than three years later. *See 1000 Virginia Ltd. P'ship*, 158 Wn.2d at 575−76 (providing that a cause of action accrues when plaintiff discovers, or in the reasonable exercise of diligence should discover, the elements of the cause of action); ECF No. 1-1.

Consequently, Plaintiff's common law invasion of privacy by appropriation claim is untimely under the statute of limitations, and there is no genuine dispute as to any material fact that precludes judgment as a matter of law for Defendant on this claim.

Both parties note that Washington State also provides a statutory cause of action for infringement of a "personality right":

---

[2] Plaintiffs refer once in their briefing to the propriety of tolling of a statute of limitation in circumstances involving "fraudulent concealment." ECF No. 118 at 4. However, the Court finds no need to analyze that issue given Plaintiffs' acknowledgement that they knew that their names were included in the bid proposal at the time that the bid was awarded.

ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION AND DENYING PLAINTIFFS' PARTIAL SUMMARY JUDGMENT MOTION ~ 13

> Any person who uses or authorizes the use of a living or deceased individual's or personality's name, voice, signature, photograph, or likeness, on or in goods, merchandise, or products entered into commerce in this state, or for purposes of advertising products, merchandise, goods, or services, or for purposes of fundraising or solicitation of donations, or if any person disseminates or publishes such advertisements in this state, without written or oral, express or implied consent of the owner of the right, has infringed such right. An infringement may occur under this section without regard to whether the use or activity is for profit or not for profit.

RCW § 63.50.050.

Plaintiffs maintain that they mistakenly omitted reference to RCW ch. 63.60 in their First Amended Complaint. ECF No. 118 at 6. Defendant argues that even if Plaintiffs intended to pursue a claim under the personality rights statute, without referencing the statute in their First Amended Complaint, Plaintiffs do not plead the elements for infringement of a personality right under the statute. ECF No. 114 at 7.

The Court cannot determine that RCW § 63.50.050 applies at all to the circumstances of this case, as Plaintiffs do not seek relief related to any advertisement, or solicitation of a donation. Therefore, the Court finds no basis to infer an additional claim raised by Plaintiffs under this statute.

As a result, the Court grants summary judgment to Defendant on the invasion of privacy by appropriation claim and denies Plaintiffs' Motion for Partial Summary Judgment.

/ / /

/ / /

ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION AND DENYING PLAINTIFFS' PARTIAL SUMMARY JUDGMENT MOTION ~ 14

1

### *Outrage/Intentional Infliction of Emotional Distress*

2      Plaintiffs allege in their First Amended Complaint that Defendant's acts or

3  omissions toward them "were outrageous, showed reckless indifference to the rights

4  and interests of Plaintiffs, and caused emotional distress to Plaintiffs over a period of

5  several years."  ECF No. 20 at 13.  Plaintiffs allege that they were "denied any form

6  of compensation by Defendant," and both Plaintiffs allegedly suffered emotional

7  distress as a result of Defendant's conduct.  *Id.*

8      "'Outrage' and 'intentional infliction of emotional distress' are synonyms for

9  the same tort."  *Kloepfel v. Bokor*, 149 Wn.2d 192, 193 n.1 (2003).  A three-year

10 statute of limitations applies to the claim under RCW § 4.16.080(2).  *Cox v. Oasis*

11 *Physical Therapy, PLLC*, 153 Wn. App. 176, 193 (Wash. Ct. App. 2009).  A

12 plaintiff raising the claim must satisfy three elements: "(1) extreme and outrageous

13 conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual

14 result to plaintiff of severe emotional distress."  *Kloepfel*, 149 Wn.2d at 195.  The

15 Washington Supreme Court has expanded that an intentional infliction of emotional

16 distress claim requires more than "a certain degree of rough language, unkindness

17 and lack of consideration" to which plaintiffs "must necessarily be hardened[.]"

18 *Kloepfel*, 139 Wn.2d at 196 (internal quotation omitted).

19     Defendant argues that the undisputed facts show that Plaintiffs' intentional

20 infliction of emotion distress claim falls short as a matter of law.  ECF No. 123 at

21 11.  Defendant continues: "At bottom, Plaintiffs were offered jobs through Akal's

ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION AND
DENYING PLAINTIFFS' PARTIAL SUMMARY JUDGMENT MOTION ~ 15

subcontractor; they hired counsel and threatened to sue Akal's subcontractor for not

paying them for the time before they began working; and their job offers were

rescinded. Akal did not engage in any conduct that is outrageous or that otherwise

supports this claim." *Id.*

Plaintiffs counter that their intentional infliction of emotional distress claim is

well supported by evidence that: "Akal represented to Plaintiffs it would compensate

them for the use of their names through employment offers. Instead, Akal ignored

Plaintiffs for more than six months, leaving Plaintiffs without income and, in

Plaintiff Hunter's case, without a residence. . . . Finally, after Plaintiffs dared to

address the issue through counsel, Akal's only response - indirectly through its

subcontractor – was to eliminate Plaintiffs' purported positions." ECF No. 118 at

15–16 (internal citations omitted).

Viewing the facts in the light most favorable to Plaintiffs, the actions by

Defendant that Plaintiffs claim amounted to intentional infliction of emotional

distress include Synergy's rescission of the employment offers on October 8, 2014,

which falls within the three-year limitations period before Plaintiffs' initial

Complaint on September 20, 2017.

However, examining Plaintiffs' recitation of the evidence that they argue

supports an intentional infliction of emotional distress claim, the Court finds that

there is no persistent question of material fact as to any of the requisite elements to

avoid summary judgment for Defendant. Plaintiffs cite to Defendant's Amended

ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION AND
DENYING PLAINTIFFS' PARTIAL SUMMARY JUDGMENT MOTION ~ 16

Answer for their bald statement that "Akal represented to Plaintiffs it would compensate them for the use of their names through employment offers." ECF No. 118 at 15 (citing ECF No. 74 at ¶17). However, Defendant's Amended Answer, ¶ 17, denied Plaintiff's allegations. ECF No. 74 at 5−6. Plaintiffs also assert that Akal "ignored" Plaintiffs for six months, but Plaintiffs elsewhere acknowledged that Akal could not start working on the MCI project until the stop work order was removed. *See* ECF Nos. 116-12 at 1; 125-1 at 14. Plaintiffs have not set forth any circumstances that a factfinder could find satisfies the requirements of extreme and outrageous conduct or intentional or reckless infliction of emotional distress by Defendant. *See Kloepfel*, 149 Wn.2d at 195.

With respect to the third element, that the conduct must have caused Plaintiffs to suffer harm, there is no question of fact as to whether Plaintiff Hunter's difficulties with housing and both of Plaintiffs' lack of income during the protest period were the result of Defendant's intentional or reckless actions. The record does not support that the parties had agreed to any compensation for Plaintiffs during the bidding or protest periods, so even if Plaintiffs, regrettably, suffered extreme emotional distress during this time period, there is no evidence to support causation.

All three essential elements of an outrage or intentional infliction of emotional distress claim are lacking. *See Kloepfel*, 149 Wn.2d at 195. Accordingly, the Court

ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION AND DENYING PLAINTIFFS' PARTIAL SUMMARY JUDGMENT MOTION ~ 17

grants summary judgment to Defendant on Plaintiffs' intentional infliction of emotional distress claim.

### *Unjust Enrichment*

Plaintiffs also raise an unjust enrichment claim in their First Amended Complaint. ECF No. 20 at 13. Plaintiffs contend that they only furnished their names and resumes to Defendant "under the belief that they were responding to a contingent job offer," and that Plaintiffs never realized any financial benefit from Defendant's use of Plaintiffs' names and credentials in the TSA bid evaluation process. *Id.* Plaintiffs further contend that Defendant "had knowledge that Plaintiffs' credentials had value and would be beneficial in its efforts to obtain the MCI contract." ECF No. 20 at 13.

Unjust enrichment claims provide for recovery for the value of a benefit retained absent any contractual relationship where notions of fairness and justice require it. *Young v. Young*, 164 Wn.2d 477, 484 (Wash. 2008). To sustain an unjust enrichment claim, a plaintiff must establish: "'a benefit conferred upon the defendant by the plaintiff; an appreciation or knowledge by the defendant of the benefit; and the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.'" *Id.* (quoting *Vailie Commc'ns, Ltd v. Trend Bus. Sys., Inc.*, 61 Wn. App. 151, 159−60 (1991)). A three-year statute of limitations applies to an unjust enrichment claim. RCW § 4.16.080(3).

ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION AND DENYING PLAINTIFFS' PARTIAL SUMMARY JUDGMENT MOTION ~ 18

1    As with Plaintiffs' intentional infliction of emotional distress claim,

2   Defendant relies on the same arguments as the invasion of privacy by appropriation

3   claim to argue that the statute of limitation for Plaintiffs' unjust enrichment claim

4   expired before Plaintiffs filed this lawsuit.  ECF No. 123 at 10.  Regarding the

5   substance of Plaintiffs' unjust enrichment claim, Defendant argues that Plaintiffs

6   have not come forth with evidence supporting that their names had "any impact on

7   TSA's decision to award Akal the contract."  ECF No. 123 at 10.  Rather, Defendant

8   contends, TSA's removal in 2015 of Plaintiffs' names from the contract document

9   "supports the fact that TSA did not care at all whether Plaintiffs were going to be

10  involved at MCI."  *Id.*

11    Plaintiffs respond that they could have had no knowledge of Defendant's

12  decision not to compensate them for their alleged role in securing the MCI contract

13  until Defendant rescinded their employment offers on October 8, 2014.  ECF No.

14  118 at 5.  With respect to the substance of their unjust enrichment claim, Plaintiffs

15  argue that Akal benefitted from the use of their names by being selected as the

16  contractor and that Defendant "cannot show that TSA failed to properly evaluate

17  Plaintiffs' credentials as Key Personnel."  ECF Nos. 118 at 13; 86 at 11−12.

18  Plaintiffs further argue that "Akal fails to point out that TSA made the 2015 Key

19  Personnel contract modification at Akal's request or that the modification was made

20  a year after the contract award."  ECF No. 118 at 14.  Plaintiffs contend that these

21

facts support that Defendant benefitted from the use of their names upon receiving the contract award.  ECF No. 118 at 14.

As with the intentional infliction of emotional distress claim, the Court agrees with the Plaintiffs' argument that the unjust enrichment claim had not accrued as a matter of law by three years prior to the date they filed this lawsuit, by September 20, 2014.  It was not until October 8, 2014, that Plaintiffs definitively were aware that they had no contract with Defendant, so they could not have been aware of a claim based on quasi-contract and equitable principles.

However, with respect to the elements of an unjust enrichment action, Plaintiffs do not provide any support in the record for their contention that Defendant had knowledge that Plaintiffs' credentials would or did benefit Defendant in the TSA bid evaluation process.  As Defendant points out in its briefing, "Plaintiffs did not depose Akal, and they cannot show what Akal intended."  ECF No. 123 at 2.  Plaintiffs argue instead that federal regulations require award selection to be based on a bidder's ability to provide personnel with aviation security expertise and that TSA included a field for providing information regarding key personnel on its Solicitation form.  ECF No. 118 at 9.  However, these facts do not support that TSA awarded the contract to Defendant even in part because Plaintiffs were included as key personnel in the bid application.  Rather, the evidence in the record that TSA itself substituted other personnel for Plaintiffs in the contract after the protest was resolved conflicts with Plaintiffs' position on this matter.  *See* ECF No.

ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION AND DENYING PLAINTIFFS' PARTIAL SUMMARY JUDGMENT MOTION ~ 20

116-5 at 1, 6.  Regardless of whether Defendant requested the substitution, TSA's action supports that awarding the contract to Defendant was not contingent on Plaintiffs' employment as key personnel.

Therefore, the Court grants summary judgment to Defendant on Plaintiffs' unjust enrichment claim.

Accordingly, **IT IS HEREBY ORDERED** that:

1.    Plaintiffs' Motion for Partial Summary Judgment, **ECF No. 86**, is **DENIED**.

2.    Defendant's Motion for Summary Judgment, **ECF No. 113**, is **GRANTED**.

3.    Judgment shall be entered for Defendant Akal on all claims raised by Plaintiffs' First Amended Complaint, ECF No. 20.

4.    The parties' Stipulated Voluntary Dismissal of Counterclaims, **ECF No. 132**, is **GRANTED**.

5.    Defendant's remaining counterclaims of abuse of process and civil conspiracy are **DISMISSED WITHOUT PREJUDICE**.  Each party shall bear its own costs and fees.

6.    As there are no further pending claims or counterclaims in this action, the remaining schedule and hearings in this matter are **VACATED**, and any remaining motions are **DENIED AS MOOT**.

1    The District Court Clerk is directed to enter this Order, enter judgment as

2 directed, provide copies to counsel and to United States Magistrate Judge John T.

3 Rodgers, to whom this matter previously was referred for a settlement conference,

4 and **close the file** in this case.

5    **DATED** October 9, 2020.

6

7    _s/ Rosanna Malouf Peterson_
    ROSANNA MALOUF PETERSON
    United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION AND
DENYING PLAINTIFFS' PARTIAL SUMMARY JUDGMENT MOTION ~ 22